UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WENZEL EUGENE NORMAN,

        Petitioner,

v.                                        Case No. 3:15-cv-1045-J-34JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.
_____

## ORDER

### I. Status

Petitioner Wenzel Eugene Norman, an inmate of the Florida penal system, initiated this action on August 16, 2015, by filing a pro se Petition for Writ of Habeas Corpus (Petition; Doc. 1) under 28 U.S.C. § 2254.[1] In the Petition, Norman challenges a 2007 state court (Duval County, Florida) judgment of conviction for trafficking in heroin and trafficking in cocaine. Respondents have submitted a memorandum in opposition to the Petition. See Respondents' Answer to Petition for Writ of Habeas Corpus (Resp.; Doc. 20) with exhibits (Resp. Ex.). On February 24, 2017, the Court entered an Order (Doc. 21) giving Norman a time frame in which to submit a reply. Norman submitted a brief in reply. See Petitioner's Reply to Respondents' Answer to the Petition (Reply; Doc. 26). This case is ripe for review.

_____

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).

## II. Procedural History

On August 28, 2006, the State of Florida charged Norman with trafficking twenty-eight grams or more, but less than thirty kilograms, of heroin (count one); trafficking four grams or more, but less than fourteen grams, of heroin (count two); trafficking twenty-eight grams or more, but less than 200 grams, of cocaine (count three); and possession of a firearm by a convicted felon (count four). See Resp. Ex. 1 at 8. On June 21, 2007, with the assistance of counsel, Petitioner filed a motion to sever count four from the remaining counts. Resp. Ex. 1 at 28-29. The circuit court granted Petitioner's motion to sever the same day. Id. The state later nolle prossed count four. See State v. Norman, 2006-CF-12343 (Fla. 4th Cir. Ct.).

Norman proceeded to a jury trial on counts one, two, and three, at the conclusion of which, on August 16, 2007, the jury found him guilty, as charged. See Resp. Ex. 1 at 54-56. On October 9, 2007, the circuit court sentenced Norman to incarceration for a minimum mandatory term of twenty-five years for count one, and a twenty-five-year term with a three-year minimum mandatory for each count two and three, to run concurrently with count one. See Resp. Ex. 1 at 60-68.

On direct appeal, Norman, with the benefit of counsel, filed an initial brief pursuant to Anders v. California, 386 U.S. 738 (1967) representing that no good faith argument of reversible error could be made. Resp. Ex. 3. The First District Court of Appeal (First DCA) granted Norman leave to file a pro se initial brief. Resp. Ex. 4. Norman then filed a pro se initial brief raising the following issues: the trial court erred in denying Norman's motion in limine regarding evidence of a crime for which Norman was not charged (issue one); the trial court erred in allowing a state witness to violate Norman's confrontation rights under

Crawford v. Washington, 541 U.S. 36 (2004) (issue two); and the trial court erred in permitting Detective Lavell Thomas (Detective Thomas) to bolster the testimony of Detective Bertrand Hollins (Detective Hollins) (issue three). Resp. Ex. 5. The state did not file an answer brief. See Resp. Ex. 6. On December 16, 2008, the First DCA per curiam affirmed Norman's convictions and sentences without a written opinion. See id.; Norman v. State, 997 So. 2d 409 (Fla. 1st DCA 2008). The First DCA issued its mandate on January 13, 2009. Resp. Ex. 6.

On December 29, 2009, Norman filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, raising the same claims as those raised in issue two and issue three of his pro se initial brief on direct appeal, and an additional claim that the trial court erred in omitting a jury instruction for simple possession of heroin as a lesser included offense for count one. Resp. Ex. 7 at 1-13. Norman filed a motion to amend his Rule 3.850 motion on October 23, 2013. Id. at 14-17. That same day, Norman filed an amended Rule 3.850 motion for postconviction relief asserting that trial counsel (Katherine Littell) was ineffective because she failed to: object to the jury instruction and verdict forms as to the lesser included offenses (ground one); object to hearsay testimony (ground two); object to Detective Thomas bolstering the testimony of Detective Hollins (ground three); adequately advise Norman about testifying on his own behalf (ground four); and the cumulative effect of trial counsel's errors violated his Sixth Amendment and due process rights (ground five). Id. at 18-41.

The circuit court granted Norman's motion for leave to amend, and on September 23, 2014, struck ground four of Norman's amended Rule 3.850 motion and gave him sixty days to file a facially sufficient claim. Id. at 42-46. In response, Norman withdrew ground

four. Id. at 47. On December 23, 2014, the circuit court summarily denied Norman's Rule 3.850 motions. Id. at 54-62. The First DCA affirmed the circuit court's denial per curiam on April 29, 2015, and issued its mandate on March 10, 2016. Resp. Ex. 10.

### III. One-Year Limitations Period

The Petition appears to be timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Norman's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

## A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" Id. (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court recently stated:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds

that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. As the Eleventh Circuit has explained:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise

> relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[2] Titlow, 571 U.S. at ---, 134 S. Ct. at 15 (quoting Wood v. Allen, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016), cert. denied, 137 S. Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1)'s "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that Norman's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available

---

[2] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." Clark v. Att'y Gen., Fla., 821 F.3d 1270, 1286 n.3 (11th Cir. 2016), cert. denied, 137 S. Ct. 1103 (2017).

for challenging his state conviction. <u>See</u> 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including

constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[3] supra, at 747–748, 111 S. Ct. 2546; Sykes,[4] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

---

[3] Coleman v. Thompson, 501 U.S. 722 (1991).

[4] Wainwright v. Sykes, 433 U.S. 72 (1977).

[5] Murray v. Carrier, 477 U.S. 478 (1986).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough

v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). "In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Norman alleges that the circuit court erred in denying his pretrial motion in limine and allowing the introduction of improper collateral crimes evidence. Doc. 1 at 5. Specifically, Norman contends that the prior drug transactions that occurred at Norman's

residence were not sufficiently similar to the charged offense, and the prejudicial effect of allowing such evidence outweighed any probative value. Id. Respondents contend that Norman failed to fairly present the federal nature of this claim in the state court, and as such, his claim is unexhausted and procedurally defaulted.  Resp. at 15-24. They also assert that this claim is not cognizable and otherwise without merit.  Id.

Initially, to the extent Norman urges that the state court erred under Florida law when it allowed the state to present this evidence, this assertion is not cognizable on federal habeas review.  "As a general rule, a federal court in a habeas corpus case will not review the trial court's actions concerning the admissibility of evidence," because the state court "has wide discretion in determining whether to admit evidence at trial[.]" Alderman v. Zant, 22 F.3d 1541, 1555 (11th Cir. 1994); see also Baxter v. Thomas, 45 F.3d 1501, 1509 (11th Cir. 1985) (federal habeas corpus is not the proper vehicle to correct evidentiary rulings); Boykins v. Wainwright, 737 F.2d 1539, 1543 (11th Cir. 1984) (federal courts are not empowered to correct erroneous evidentiary rulings in state court except where rulings deny petitioner fundamental constitutional protections). Thus, Norman's allegations that the trial court violated state law are not proper for the Court's consideration.

Additionally, while Norman attempts to add a claim in his Reply that the trial court's error violated his Fourteenth Amendment right to a fair and impartial trial, see Reply at 3, the Court need not consider this claim raised for the first time in his Reply brief. Norman did not seek leave to amend his Petition to add a Fourteenth Amendment claim after Respondents filed their Response. See Fla. R. Civ. P. 15(a)(2); see also Oliveiri v. United States, 717 F. App'x 966, 967 (11th Cir. 2018) (affirming district court's decision to not

construe reply brief as a request for leave to amend § 2255 petition to add new claim as amendment would be untimely and futile); <u>Garcia v. Sec'y, Dept. of Corr.</u>, No. 8:10-cv-2116-T-27MAP, 2013 WL 3776674, at *4-5 (M.D. Fla., July 17, 2013) (noting that habeas petitioner's new claim raised in his reply was not authorized, where the Rules Governing Habeas Corpus Cases Under Section 2254 required all grounds for relief to be stated in the petition, and petitioner failed to seek leave to amend his petition after a response had been served); <u>Ware v. Crews</u>, No. 3:12cv524, 2013 WL 3546474, at *14 (N.D. Fla., July 11, 2013) (finding petitioner did not properly raise forfeiture of gain time claim where petitioner raised it for the first time in reply to respondents' answer, petitioner did not seek leave to amend petition, and reply expressly stated intent that document be deemed reply to answer). Instead, in his Reply, Norman adds one conclusory sentence invoking his Fourteenth Amendment right to due process. The Court declines to construe this conclusory allegation lacking in any support or discussion to be a proposed amended petition or even a request to amend his Petition. Thus, to the extent Norman attempts to add a Fourteenth Amendment claim, the Court need not address it.

To the extent Ground One can be liberally construed as a federal constitutional challenge, this claim is unexhausted because Norman did not present the federal nature of this claim to the state appellate court. Norman raised this exact claim as issue one of his pro se initial brief on direct appeal. Resp. Ex. 5 at 4-7. When briefing this issue, Norman did not state or suggest that it was a federal claim about due process or any other federal constitutional guarantee. <u>Id.</u> Instead, Norman argued, in terms of state law only, that the trial court failed to heed the evidentiary standard outlined in section 90.403, Florida Statutes, and that the collateral crimes and the charged crimes did not

demonstrate a unique pattern of criminal activity. Id. at 6 (citing Donley v. State, 694 So. 2d 149 (Fla. 4th DCA 1997); Blackburn v. State, 314 So. 2d 634 (Fla. 4th DCA 1975); Black v. State, 630 So. 2d 609, 617 (Fla. 1st DCA 1993)). Although Norman referenced the Sixth Amendment of the United States Constitution in his brief, Norman failed to articulate and fairly present a federal constitutional claim. Resp. Ex. 5 at 7. Merely citing to the federal constitution is insufficient to exhaust a claim in state court. See Anderson v. Harless, 459 U.S. 4, 7 (1982). As such, Ground One is unexhausted and procedurally defaulted, and Norman has failed to show cause for or prejudice from this procedural bar.

Nevertheless, assuming this claim is exhausted and properly presented to the Court, it is still without merit because the state court's evidentiary ruling did not "'so infuse[] the trial with unfairness as to deny due process of law.'" Smith v. Jarriel, 429 F. App'x 936, 937 (11th Cir. 2011) (quoting Felker v. Turpin, 83 F.3d 1303, 1311-12 (11th Cir. 1996)). The circuit court conducted a pretrial hearing on Norman's motion in limine. Resp. Ex. 1 at 76-86. During the hearing, Norman's trial counsel requested that the court prohibit Detective Hollins from testifying that he purchased drugs from Norman on two prior occasions. Id. at 80. In response, the prosecutor conceded and explained the following:

> [T]he State doesn't intend to ask Detective Hollins about prior criminal activity. All the State wants to do is have Detective Hollins testify that he had been to Mr. Norman's house previously and had met with him at that house. I don't intend to put on a single piece of evidence about that meeting being actually a drug transaction. The purpose is to show that that house was occupied by Mr. Norman, which goes right to the heart of counts two and three because that was the narcotics recovered upon the search warrant.

Id. at 80-81. Norman avers that the prosecutor disregarded his assurance and elicited improper collateral crimes testimony. Doc. 1 at 5-6. However, the testimony that Norman cites to support this allegation is unpersuasive. Id. Specifically, at trial, the following exchange occurred between Detective Hollins and the state:

Q:     Once you got to the house, what happened next?

A:     I knocked on the door. Mr. Norman opened the door and I went inside.

Q:     And had you previously been to this residence?

A:     Yes.

Q:     How many times?

A:     Twice.

Q:     Over what time period, number of days, were you at that address?

A:     Oh, about a month and a half.

Q:     Was the defendant, Mr. Norman, at that address those previous occasions?

A:     Yes.

Q:     And did he also answer the door on those occasions?

A:     Yes.

Q:     Did you talk to the defendant on those prior occasions?

A:     Yes.

Q:     Was there anyone ever in the house with him on any of the three occasions?

A:     Yes.

Q:     Was it always the same person or was it a different person?

A:    Different.

Resp. Ex. 2A at 31-32. The state then questioned Detective Hollins about the August 9, 2006, drug transaction that ultimately resulted in the state charging Norman with the offenses in counts one, two, and three. Id. at 8, 31-32. Detective Hollins did not testify about specific uncharged drug transactions. Rather, as the state intended, the logical inference that can be drawn from this testimony is that Norman regularly occupied the home. This fact was material to the state's position that Norman had control over the drugs that were subsequently seized from the home. As such, the Court does not find that this evidence "so infused the trial with unfairness as to deny due process of law." Felker, 83 F.3d at 1311-12. Norman's claim for relief in Ground One is due to be denied on the merits.

### B. Ground Two

Norman contends that the circuit court erred in allowing testimony in violation of his Sixth Amendment right to confrontation under Crawford v. Washington, 541 U.S. 36 (2004). Doc. 1 at 8. In support of this allegation, Norman maintains that Detective Hollins improperly testified about out-of-court, testimonial statements that Detective Charles Bates (Detective Bates) made during the search of Norman's home. Id. Norman raised this claim in issue two of his pro se initial brief on direct appeal.[6] Resp. Ex. 5 at 8. Without requiring the state to submit briefing on the matter, the First DCA affirmed Norman's convictions and sentences. Resp. Exs 4; 6.

---

[6] The Court notes that Norman again raised this claim in his initial Rule 3.850 motion. Resp. Ex. 5 at 8. The postconviction court found that claims of trial court error are not cognizable in a motion for postconviction relief. Id. at 54 n.2. In this case, Norman does not challenge the postconviction court's finding.

While Respondents acknowledge that Norman raised this argument before the state appellate court, they nevertheless assert that the claim is unexhausted. Resp. at 27. Essentially, Respondents aver that the appellate court did not reach the merits of this issue because counsel did not make a specific objection at trial to preserve a Crawford challenge for review on direct appeal. Id. (citing Williams v. State, 967 So. 3d 735, 747 n.11 (Fla. 2007)). The Court disagrees. Although Respondents correctly note that counsel did not make a specific Crawford objection, the record reveals that counsel did make an objection on "personal knowledge." Resp. Ex. 2A at 36-37. As such, without further appellate briefing and a written opinion from the state appellate court indicating otherwise, the Court declines to find this claim unexhausted and procedurally barred. See Corona v. State, 64 So. 3d 1232, 1242 (Fla. 2011) (holding there is no requirement that a defendant use special words to preserve constitutional Crawford claim); Evans v. State, 838 So. 2d 1090, 1097 n.5 (Fla. 2002) (holding that failure to specifically assert a Sixth Amendment challenge will not preclude appellate review where the hearsay objection "is closely related to the right of confrontation").

In the event the state appellate court did adjudicate this claim on the merits, the state court's decision is entitled to deference. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Norman is not entitled to relief on the basis of this claim.

Further, even absent deference to the First DCA's adjudication, Norman's claim is meritless. The Court notes that testimonial statements of a witness not appearing at trial may not be admitted unless the witness is unavailable and previously subject to cross-examination. Crawford, 541 U.S. at 55-56. "In Crawford, the Court eschewed a comprehensive definition of 'testimonial,' but referenced a definition of 'testimony' as "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." United States v. Flores, 286 F. App'x 206, 214 (5th Cir. 2008) (quoting Crawford, 541 U.S. at 68). The Supreme Court further noted that "nonverbal conduct contains a testimonial component whenever the conduct reflects the actor's communication of his thoughts to another." Pennsylvania v. Muniz, 496 U.S. 582, 595 n.9 (1990).

The following testimony from Detective Hollins is the subject of this Ground:

> Q: All right. How many officers from your narcotics unit were involved in the search of the house at that point?
>
> A: I want to say six of us.
>
> Q: Was Detective Chuck Bates involved in the search?
>
> A: Yes.
>
> Q: And were you . . . involved in searching any part of the house with Detective Bates?
>
> A: Yes, the bedroom.
>
> Q: During the search of the bedroom did you and Detective Bates find any narcotics?
>
> A: Detective Bates recovered some narcotics from the bedroom.
>
> MS. LITTELL: Objection. Personal Knowledge.
>
> BY MR. LIPPELMAN:

Q:     Did you watch as Detective Bates found the narcotics?

A:     Yes.

Q:     As you watched Detective Bates find the narcotics, explain to the jury where it was found.

A:     It was a pile of clothes on the floor and it was in a sock. He picked the sock up. He felt the sock. He felt some lumps in the sock and he reached in and pulled out the narcotics.

Q:     Did you actually see Detective Bates pull narcotics out of the sock?

A:     Yes.

Q:     And . . . tell the jury specifically what were the narcotics that were inside the sock?

MS. LITTELL:      Objection

THE COURT:       I suspect I need to sustain that objection.

Resp. Ex. 2A at 36-37; Doc. 1 at 8-9. Upon review of this testimony, it is obvious that Detective Hollins' testimony about the conduct of Detective Bates does not amount to testimonial hearsay under Crawford. Detective Bates rummaging through a pile of clothes and picking up a sock containing drugs does not constitute "testimony" under the Confrontation Clause because it did not assert or communicate anything. Detective Hollins testified about his own observations during the search of Norman's residence, and any reference to Detective Bates' actions was merely an extension of his observations. In other words, Detective Hollins offered "straight-forward eyewitness testimony." United States v. Marshall, 259 F. App'x 855, 861 (7th Cir. 2008). Detective Hollins had first-hand knowledge about the facts to which he testified, and Norman's ability to cross-examine

Detective Hollins about the search satisfied Norman's confrontation rights. Norman's claim for relief in Ground Two is due to be denied.

### C. Ground Three

Norman maintains that the circuit court erred in allowing the state to impermissibly bolster Detective Hollins' credibility through Detective Thomas' trial testimony. Doc. 1 at 11. According to Norman, Detective Thomas' testimony was cumulative to and consistent with Detective Hollins' version of events, and intended only to strengthen Detective Hollins' credibility. Norman avers this error denied him of his constitutional right to a fundamentally fair trial. Id. at 13. Norman raised this claim as issue three in his pro se initial brief on direct appeal.[7] Resp. Ex. 5 at 12-17. The First DCA affirmed Norman's convictions and sentences per curiam. Resp. Ex. 6.

Respondents again allege that this issue is unexhausted because counsel only objected to Detective Thomas' testimony on "relevance" and "speculation" grounds; thus, precluding review on direct appeal of any claims regarding improper bolstering. Resp. at 33. However, under Florida law, an unpreserved allegation of improper bolstering is still reviewable on direct appeal if the alleged bolstering amounts to fundamental error. See Johnson v. State, 238 So. 3d 726, 740 (Fla. 2018) (confirming bolstering claims are subject to contemporaneous objection rule and fundamental error analysis). Considering this principle, and because the First DCA affirmed Norman's convictions and sentences

---

[7] The Court notes that Norman again raised this claim in his initial Rule 3.850 motion. Resp. Ex. 5 at 9. The postconviction court found that claims of trial court error were not cognizable in a motion for postconviction relief. Id. at 54 n.2. In this case, Norman does not challenge the postconviction court's denial.

without stating the basis for its affirmance, Respondents' procedural default argument fails.

Given the procedural history, the appellate court may have affirmed Norman's convictions and sentences on the merits. If the First DCA addressed the merits, this adjudication is entitled to deference under AEDPA. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Norman is not entitled to relief on the basis of this claim.

Nevertheless, if the state court's adjudication is not entitled to deference, Norman's claim still fails. Improper bolstering occurs when a prosecutor makes personal assurances about a state witness' credibility or implies that facts not before the jury support the state witness' testimony. See United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991). Likewise, a prosecutor is prohibited from procuring such improper bolstering through the direct examination of other state witnesses. See United States v. Rosario-Diaz, 202 F.3d 54, 65 (1st Cir. 2000) (stating prosecutor may not permissibly bolster witness through other witnesses' testimony); United States v. Piva, 870 F.2d 753, 760 (1st Cir. 1989) (stating prosecutor's solicitations of trustworthiness from other government witnesses may constitute impermissible vouching). However, government witnesses may testify about facts within their personal knowledge that corroborate another state witness' testimony; especially when the state's case primarily relies on the credibility of a single

key witness. <u>Rosario-Diaz</u>, 202 F.3d at 65. The prosecutor simply must present such corroborating testimony "through competent and reliable evidence and not through improper vouching that could invite the jury to find guilt on the basis of something other than the evidence presented at trial." <u>Id.</u> Improper bolstering violates due process if its admission renders the trial fundamentally unfair. <u>Snowden v. Singletary</u>, 135 F.3d 732, 737 (11th Cir. 1998). "A denial of fundamental fairness occurs whenever the improper evidence 'is material in the sense of a crucial, critical, highly significant factor.'" <u>Id.</u> (quoting <u>Osborne v. Wainwright</u>, 720 F.2d 1237, 1238 (11th Cir. 1983)).

At trial, Detective Thomas testified that on August 9, 2006, he provided security for Detective Hollins who was posing as a drug buyer. Resp. Ex. 2A at 23. The evidence at issue in this Petition is the following exchange between the state and Detective Thomas:

> Q:   What was Detective Hollins going to do as an undercover detective that day?
>
> A:   That day he was going out to purchase some heroin from the defendant.
>
> Q:   And how were you and Detective Hollins dressed?
>
> A:   We were dressed down in civilian clothes, work clothes, pair of work pants, work shirt, boots.
>
> Q:   And . . . were you in a vehicle?
>
> A:   Yes.
>
> Q:   Tell the jury what was the vehicle. You don't have to tell any investigative details, but what kind of vehicle generally?
>
> A:   We were in a car.
>
> Q:   Was it marked as a police car?
>
> A:   No. It was an undercover car, plain car.

> Q:     Where did you go with Detective Hollins on August 9,
>        2006, so that he could pose as an undercover drug
>        buyer?
>
> A:     Went to the defendant's address.
>
> Q:     Do you know that address?
>
> A:     No, sir, not off the top of my head.

Doc. 1 at 11-12; Resp. Ex. 2A at 24-25. This questioning does not amount to improper bolstering. Detective Thomas did not make statements about Detective Hollins' credibility nor did he imply that Detective Hollins should be trusted because Detective Hollins' version of events coincided with his own. Further, even if portions of Detective Thomas' testimony were cumulative to Detective Hollins' testimony, any replication of evidence was insignificant at best. While Detective Thomas explained that he was a passenger in the vehicle that Detective Hollins drove to and from Norman's residence, Detective Thomas testified that he did not see or hear anything that occurred inside Norman's home while Detective Hollins was inside. Resp. Ex. 2A at 26-27. He also explained that he did not personally find any inculpatory evidence during the subsequent search of Norman's home. Id. As such, the Court finds that Detective Thomas' testimony did not amount to improper bolstering. Further, Norman had the opportunity to cross-examine both Detectives during trial, and the circuit court instructed the jury to evaluate the credibility of each witness based on their individual opportunity to see and know the things about which each witness testified. Resp. Ex. 2B at 207. A thorough review of the record shows that this testimony did not deprive Norman of a fundamentally fair trial. Norman's claim for relief in Ground Three is due to be denied.

## D. Ground Four

Norman contends that his trial attorney was ineffective for failing to object to the jury instructions and verdict forms, which failed to address lesser included offenses. Doc. 1 at 14. Specifically, Norman avers that counsel should have adequately requested that the jury be instructed on the lesser included offense of "simple possession of hydrocodone [sic]." Id. at 15. According to Norman, this instruction was "required as an exercise of the doctrine of jury pardon." Id. Norman raised this claim in his amended Rule 3.850 motion in state court. Resp. Ex. 7 at 21-24. The circuit court ultimately denied this claim, stating in pertinent part:

> In this ground, Defendant alleges his counsel was ineffective by failing to object to jury instructions and verdict forms regarding potential lesser-included offenses. Specifically, Defendant argues that he "was entitled to a requested jury instruction on simple possession as a permissible lesser-included offense of trafficking by possession" and claims "such instruction was required as an exercise of the doctrine of jury pardon." Defendant further argues that counsel's "argument was not sufficient to point out that the Defendant is entitled to any jury instruction on his theory of the case if there is any evidence to support it." Defendant claims that counsel did not sufficiently argue for a category two, permissive, lesser-included offense.
>
> . . .
>
> The record shows that defense counsel did request the category two lesser-included offense of possession of heroin as to Count One at the charge conference. The Assistant State Attorney objected to the instruction being given to the jury. After further discussion, the Court then ruled that it would not give the simple possession instruction unless there was some evidence presented at trial to support it. Thus, counsel was not deficient because she did request the instruction. Moreover, the fact that Defendant believes counsel's argument in support of the instruction was insufficient is not enough to establish deficiency under Strickland, because

counsel's argument fell within the wide range of professionally competent assistance.

Even assuming arguendo that counsel was deficient in this case, Defendant's allegations as to prejudice in the instant Motion fall short, given that the jury found him guilty of the greater offense. See Sanders [v. State], 946 So. 2d [953,] 960 [(Fla. 2006)]. Defendant has failed to meet his burden under Strickland and is, therefore, not entitled to relief as to this ground.

Resp. Ex. 7 at 56-58 (record citations omitted). On appeal, the First DCA affirmed the circuit court's denial of postconviction relief per curiam. Resp. Ex. 10.

To the extent that the First DCA affirmed the circuit court's denial on the merits,[8] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Norman is not entitled to relief on the basis of this claim.

Even assuming the state appellate court's adjudication of this claim is not entitled to deference, Norman's allegation is still without merit. Norman maintains that counsel's error prejudiced him because omission of this lesser included offense prevented the jury from exercising its "pardon power." Doc. 1 at 15. However, when analyzing a claim of ineffective assistance of counsel for failure to request an instruction on a lesser included

---

[8] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

offense, "[t]he possibility of a jury pardon cannot form the basis for a finding of prejudice under Strickland." Sanders v. State, 946 So. 2d 953, 960 (Fla. 2006); see also Bell v. McNeil, 353 F. App'x 281, 286 (11th Cir. 2009). Here, the jury found beyond a reasonable doubt that the evidence established every element of the charges in counts one, two, and three of the information. Resp. Ex. 1 at 54-56. The Court cannot now find that the same jury would have ignored its own findings of fact, disregarded the circuit court's instruction on the law, and found Norman guilty of such lesser included offenses instead. See Sanders, 946 So. 2d at 960. Thus, Norman's claim for relief in Ground Four is due to be denied.

## E. Ground Five

Norman contends that counsel was ineffective for failing to object to impermissible hearsay testimony that the state elicited during Detective Thomas' and Detective Hollins' trial testimony. Doc. 1 at 17-19. According to Norman, each of these Detectives testified about out-of-court statements that Detective Bates made during Norman's criminal investigation. Id. Norman asserts that his inability to cross-examine Detective Bates violated his Sixth Amendment confrontation rights. Id.

Norman raised this claim in his amended Rule 3.850 motion in state court. Resp. Ex. 7 at 24-28. The circuit court denied this claim, finding in pertinent part:

> Defendant alleges ineffective assistance of counsel for failing to object to the hearsay testimony from two State witnesses: (1) Detective Thomas; and (2) Detective Hollins. Defendant maintains that both detectives testified as to what Detective Bates told them which amounts to a Crawford violation, as Detective Bates did not testify at trial. The record refutes this claim. The Assistant State Attorney did not ask any questions eliciting hearsay testimony from either of the witnesses. Instead, both detectives were questioned regarding their observations of Detectives Bates' actions in recovering the

> drugs. Thus, there was no hearsay testimony elicited during
> the testimony of Detective Thomas or Detective Hollins
> regarding statements made by Detective Bates. Accordingly,
> the Court finds counsel cannot be ineffective for failing to raise
> a non-meritorious objection. <u>See</u> <u>Dennis v. State</u>, 109 So. 3d
> 680, 692 (Fla. 2012). Defendant is not entitled to relief.

<u>Id.</u> at 58-59. The First DCA affirmed the circuit court's denial of postconviction relief per curiam. Resp. Ex. 10.

If the appellate court addressed the merits, the state court's adjudication of this claim is entitled to deference under AEDPA.[9] After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law and did not involve an unreasonable application of clearly established federal law. Nor was the state court's adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Accordingly, Norman is not entitled to relief on the basis of this claim.

In the event the state appellate court's adjudication is not entitled to deference, Norman's claim still fails. Preliminarily, upon a complete review of Detective Thomas' trial testimony, the Court finds that Detective Thomas did not reference Detective Bates in <u>any</u> respect. Resp. Ex. 2A at 22-28. When questioned about the search of Norman's residence, Detective Thomas simply stated that he was present when things were found. <u>Id.</u> at 27. Thus, there existed no improper hearsay on which an objection could have been made. Further, as addressed in Ground Two <u>supra</u>, Detective Hollins' testimony about Detective Bates' nonassertive conduct does not amount to testimonial hearsay under

---

[9] This Court presumes that the appellate court "adopted the same reasoning" as the postconviction court. <u>Wilson</u>, 138 S. Ct. at 1192.

Crawford. See Resp. Ex. 2A at 36-37. Detective Hollins' own observations do not involve a witness' out-of-court "testimony," but merely constitute "straight-forward eyewitness testimony" from an individual with personal knowledge. See Marshall, 259 F. App'x at 861. Therefore, counsel was not deficient for failing to make an objection, and Norman's ability to cross-examine Detective Hollins and Detective Thomas about the search satisfied Norman's confrontation rights. See Lattimore v. United States, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection). As such, Norman's claim in Ground Five is due to be denied.

### F. Ground Six

Norman avers that counsel was ineffective for failing to object when the state used Detective Thomas' testimony to impermissibly bolster Detective Hollins' credibility. Doc. 1 at 20. Norman raised this claim in his amended Rule 3.850 motion in state court. Resp. Ex. 7 at 29-31. The circuit court ultimately denied this claim, stating in pertinent part:

> Defendant alleges counsel was ineffective for failing to object to Detective Thomas bolstering the testimony of Detective Hollins. Specifically, Defendant argues that "Detective Thomas impermissibly bolstered the credibility of Detective Hollins during direct examination" and that "the State's witness, an experienced Detective, selectively volunteering [sic] inappropriate matters to a jury injected the improper evidence into the proceedings."
>
> Again, a complete review of the record refutes this claim. The only question on direct examination that could possibly be construed as improper bolstering was objected to by counsel and overruled by the Court.
>
> THE STATE:    What was Detective Hollins going to do as an undercover that day?
>
> DEFENSE:    Objection. Relevance, Your Honor.

| THE COURT: | Overruled. |
| DEFENSE: | It's speculation. |
| THE COURT: | Overruled. |
| THE STATE: | What was Detective Hollins going to do as an undercover detective that day? |
| WITNESS: | That day he was going out to purchase some heroin from the defendant. |

The remainder of Detective Thomas' direct examination is focused on his personal observations. As such, the Court denies Ground Three as Defendant fails to show either prong under Strickland.

Resp. Ex. 7 at 59-60 (record citations omitted). On appeal, the First DCA affirmed the circuit court's denial per curiam. Resp. Ex. 10.

To the extent the First DCA affirmed the circuit court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.[10] In doing so, and after review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Norman is not entitled to relief on the basis of this claim.

---

[10] This Court presumes that the appellate court "adopted the same reasoning" as the post-conviction court. Wilson, 138 S. Ct. at 1192.

Further, even assuming the state appellate court's adjudication of this claim is not entitled to deference, Norman is still not entitled to the relief he seeks. As described in Ground Three supra, Detective Thomas' brief testimony was not improperly cumulative or bolstering of Detective Hollins' statements at trial. Detective Thomas testified that he did not see or hear anything that occurred inside Norman's home while Detective Hollins was making the undercover purchase, and he did not personally find any inculpatory evidence during the subsequent search of Norman's home. Resp. Ex. 2A at 26-27. If portions of Detective Thomas' testimony were cumulative to Detective Hollins, such similarities did not amount to improper vouching, but were merely personal observations. As such, counsel was not deficient for failing to object. Further, Norman had the opportunity to cross-examine both Detectives during trial, and the circuit court instructed the jury to evaluate the credibility of each witness based on their individual opportunity to see and know the things about which the witness testified. Resp. Exs 2A at 27-28, 55-65; 2B at 207. Accordingly, Norman cannot demonstrate that but for counsel's alleged failure, the outcome of the trial would have been different. Therefore, Norman's claim for relief in Ground Six is due to be denied.

## G. Ground Seven

Norman maintains that the cumulative effect of trial counsel's ineffectiveness deprived him of a fair trial. Doc. 1 at 23-24. Norman raised this claim in his amended Rule 3.850 motion. Resp. Ex. 7 at 35-37. In addressing this issue, the circuit court ruled as follows:

> In his final ground for relief, Defendant argues that the cumulative effect of counsel's alleged errors justifies granting Defendant's instant Motion.

It is well-settled that a claim of cumulative error cannot stand in cases where, following individual evaluation, alleged errors are found to be without merit or procedurally barred. <u>Lukehart v. State</u>, 70 So. 3d 503, 524 (Fla. 2011); <u>see</u> <u>Suggs v. State</u>, 923 So. 2d 419, 442 (Fla. 2005) (holding that when a defendant does not successfully prove any of his individual claims and, consequently, counsel's performance is deemed sufficient, a claim of cumulative error must fail.); <u>Parker v. State</u>, 904 So. 2d 370, 380 (Fla. 2005) ("Because the alleged individual errors are without merit, the contention of cumulative error is similarly without merit.").

Here, Defendant has not demonstrated that counsel was ineffective under either prong of <u>Strickland</u> in any of the claims in the instant Motion. As such, Defendant is not entitled to relief.

Resp. Ex. 7 at 60. The First DCA affirmed per curiam without a written opinion. Resp. Ex. 10. To the extent the First DCA affirmed the circuit court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.[11] In doing so, and after review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Norman is not entitled to relief on the basis of this claim.

Nevertheless, in the event the state court's adjudication is not entitled to deference, this claim is without merit. "The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." <u>United</u>

---

[11] This Court presumes that the appellate court "adopted the same reasoning" as the post-conviction court. <u>Wilson</u>, 138 S. Ct. at 1192.

States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) (internal quotation marks omitted). The Eleventh Circuit addresses "claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that [it] find[s] in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). Because the Court has determined that none of Norman's individual claims of error or prejudice have merit, Norman's cumulative error claim cannot stand. See United States v. Taylor, 417 F.3d 1176, 1182 (11th Cir. 2005) ("[There being] no error in any of the district court's rulings, the argument that cumulative trial error requires that this Court reverse [the defendant's] convictions is without merit."). Thus, Norman's claim for relief in Ground Seven is due to be denied.

## VII. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Norman seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Norman "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.      The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.      The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.      If Norman appeals the denial of the Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 13th day of June, 2018.

MARCIA MORALES HOWARD
United States District Judge

Jax-7

C:      Wenzel Eugene Norman, #443497
        Bryan G. Jordan, Esq.